UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORTEZ ATKINS,

        Plaintiff,

Case No. 1:08-cv-972

Hon. Robert J. Jonker

v.

MARK CHRISTIANSEN, *et al.*,

        Defendants.

                                      /

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by prisoner incarcerated by the Michigan Department of Corrections (MDOC) pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendants' motion to dismiss and for summary judgment (docket no. 24).

**I.    Background**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff has named the following defendants in his complaint: Carson City Correctional Facility (DRF) Inspector Mark Christiansen; Baraga Correctional Facility (AMF) Inspector Craig Smith; AMF Warden David Bergh; Alger Correctional Facility (LMF) Inspector

Contreras; MDOC Director Patricia Caruso; Central Office Security Threat Group (STG) Coordinator Robert Mulvaney, and Central Facilities Administration (CFA) Deputy Director Dennis Straub.

Plaintiff's claims arise from his classification as a member of a security threat group (STG).[1] The complaint sets forth the following allegations. On June 16, 2003, DRF Inspector Christiansen designated plaintiff as an STG I. Compl. at ¶¶ 14-18.[2] Plaintiff was subsequently transferred to AMF on February 8, 2006. *Id.* at ¶ 20. In July 2006, AMF Inspector Craig Smith advised plaintiff that he would be considered for STG 1 removal if he stayed away from the Nation of Islam services and activities. *Id.* at ¶ 22. Although plaintiff had stopped attending Nation of Islam religious services in January 2006, he returned to the Nation of Islam services after meeting with Inspector Smith, stating that he "never heard from Smith again." *Id.* at ¶¶ 21-23. Plaintiff alleged that he appealed his STG I designation on "[n]umerous occasions" by written requests directed to MDOC Director Patricia Caruso, AMF Warden David Bergh, STG Coordinator Robert

---

[1] Prisoners are prohibited from being members of an STG, which is defined as "a group of prisoners designated by the Director as possessing common characteristics which distinguish them from other prisoners or groups of prisoners and which, as a discrete entity, poses a threat to staff or other prisoners or to the custody and security of the facility." MDOC Policy Directive 04.04.113 ¶¶ A, J (eff. 4/28/2003). A prisoner identified as an STG member can be designated as "STG I member" which results in consequences such as: being housed in security Level II or higher; limited visits; having only those work or school assignments as approved by the CFA Classification Director; being prohibited from attending meetings of groups established by prisoners (except religious services and activities); participating in group leisure activities; and, having his cell searched at least weekly. *Id.* at ¶¶ O-R, X. A prisoner can be designated as an "STG II member" if he is identified as a leader, enforcer or recruiter of an STG, or if he performs certain prohibited activities while designated as an STG I member. *Id.* at ¶ S. An STG II member is subject to additional consequences. *Id.* at ¶ Y. The Sixth Circuit has previously upheld the MDOC's policy directive regarding the classification of inmates as STG members, finding that the policy is rationally related to the legitimate state interest of maintaining order in the prison. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th 2005).

[2] The record reflects that plaintiff was designated as an STG I member on June 13, 2003. *See* discussion, *infra*.

Mulvaney, and CFA Deputy Director Dennis Straub. *Id.* at ¶ 24. However, none of them responded. *Id.*

The MDOC transferred plaintiff to LMF on March 7, 2008. *Id.* at ¶ 25. On or about May 30, 2008, LMF Inspector Contreras met with plaintiff regarding his removal from STG I. *Id.* They discussed a questionnaire taken from plaintiff upon his arrival at LMF that explained the differences between the Nation of Islam and the "Five Percenters." *Id.*[3] Inspector Contreras would not remove plaintiff from STG I designation at that time, but would consider it at a later date if staff members recommended removal. *Id.* On or about July 15, 2008, plaintiff received a copy of the document in which Inspector Christiansen originally designated him as an STG I for being in a group known as "Family." *Id.* at ¶ 27. Three days later, plaintiff signed an STG renunciation form, presented to him by Inspector Contreras. *Id.* at ¶ 28. However, Inspector Contreras did not accept the renunciation. *Id.* at ¶ 29.

Plaintiff alleged that he has never been involved in STG behavior. *Id.* at ¶ 30. Nevertheless, he has been subjected to the harsh conditions applied to STG I prisoners: regular shakedowns; lack of vocational training or a work assignment; limits on visitation; and inability to participate in leisure time activities. *Id.* at ¶¶ 31-37.

Plaintiff sets forth three counts against defendants in their individual and official capacities. In Count I, plaintiff alleged that the MDOC violated the Free Exercise Clause of the First Amendment, and engaged in retaliation and discrimination by confiscating "religious materials

---

[3] "The Five Percent Nation originated in New York City in the 1960s after its leader, Clarence Smith (also known as Clarence 13X and Father Allah), broke away from the Nation of Islam. The group's name derives from its belief in 'Supreme Mathematics,' which breaks down the population of the world into three groups: the Ten Percent, the Eighty Five Percent, and the Five Percent." *Fraise v. Terhune*, 283 F.3d 506, 511 (3rd Cir. 2002).

3

necessary to practice his religion." *Id.* at ¶ 44. In Count II, plaintiff alleged that his STG I designation violated his rights under the Equal Protection Clause of the Fourteenth Amendment. *Id.* at ¶ 45. In Count III, plaintiff alleged that he was deprived of his rights as guaranteed by the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc (a)(1-2). *Id.* at ¶ 46. For his relief, plaintiff seeks an injunction to remove his STG I designation and punitive damages against each defendant.

## II. Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

4

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**III. Discussion**

**A. Plaintiff's § 1983 claims against Inspector Christiansen and STG Coordinator Mulvaney**

The claims alleged against Inspector Christiansen and STG Coordinator Mulvaney with respect to his designation as an STG I member occurred on June 13, 2003. *See* docket no. 25-3 at p. 13. However, plaintiff did not file this action until October 15, 2008, more than five years after the fact. Inspector Christiansen and STG Coordinator Mulvaney contend that these claims asserted against them are barred by the relevant statute of limitations. The court agrees. Michigan's three year statute of limitations, Mich. Comp. Laws § 600.5805(8), applies to alleged civil rights violations under 42 U.S.C. § 1983. *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986). The statute of limitations for the June 13, 2003 STG 1 designation expired on June 13, 2006, more than two years before plaintiff filed this action.[4]

In his response, plaintiff contends that this action is not time barred because it is a continuing violation that commenced with his STG I designation in June 2003. The court disagrees. The Sixth Circuit has drawn a distinction between a continuing violation occasioned by "continual unlawful acts" and the "continuing ill effects from an original violation." *McCune v. City of Grand Rapids*, 842 F.2d 903, 905-06 (6th Cir. 1988). *See, e.g., Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) (continuing non-employment resulting from a discriminatory action is not a continuing

---

[4] Defendants note that because plaintiff is a prisoner proceeding under the Prison Litigation Reform Act, the statute of limitations would be tolled for the period of time required to exhaust such administrative remedies as are available. *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000). However, the tolling is inapplicable. There is no evidence that plaintiff attempted to exhaust his administrative remedies after the designation and plaintiff does not contend that he did.

5

violation). In this case, the alleged "unlawful act" was the STG I designation made on June 13, 2003. Plaintiff's subsequent confinement did not arise from subsequent acts by defendants but were the "continuing ill effects" from that original designation. Accordingly, the § 1983 action against Inspector Christiansen and STG Coordinator Mulvaney for the original STG I designation is barred by the applicable statute of limitations.

Finally, while defendants' motion apparently seeks dismissal of plaintiff's RLUIPA claim against Christiansen and Mulvaney on statute of limitations grounds, they fail to present any arguments to support the dismissal. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). A court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). Accordingly, the court deems the RLUIPA statute of limitations claim waived.

**B.  RLUIPA claims seeking monetary damages from individual defendants**

RLUIPA prevents the government from placing a substantial burden on a prisoner's religious exercise, providing in pertinent part that:

> (a) No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1. RLUIPA allows a prisoner to "assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." *Id.* at §

6

2000cc-2(a). However, a prisoner plaintiff cannot sue government employees in their individual capacities under RLUIPA. *See Smith v. Allen*, 502 F.3d 1255, 1271-75 (11th Cir. 2007) (in holding that a prisoner plaintiff was not entitled to sue defendants in their individual capacities under section 3 of RLUIPA, court observed that "a construction of RLUIPA providing for individual liability raises substantial constitutional concerns" because this section is derived from Congress' spending power and cannot be construed as creating a private action against individual defendants for monetary damages). *See also, Garrison v. Dutcher*, No. 1:07-cv-642, 2008 WL 4534098 at *4 (W.D. Mich. Sept. 30, 2008) ("[t]he Court is persuaded by the reasoning of the Eleventh Circuit and concludes that RLUIPA does not authorize individual-capacity claims"). Accordingly, defendants are entitled to summary judgment on plaintiff's RLUIPA claims for monetary damages asserted against them as individuals.

### C. Eleventh Amendment Immunity

Plaintiff's § 1983 claims for monetary damages against the defendants in their official capacities are barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities"). Similarly, defendants are entitled to Eleventh Amendment immunity with respect to plaintiff's RLUIPA claims for monetary damages against them in their official capacities. *Cardinal v. Metrish*, 564 F.3d 794, 798 (6th Cir. 2009). Accordingly, defendants are entitled to summary judgment on these claims for damages for acts performed in their official capacities.

### D. Plaintiff's claims for injunctive relief to remove the STG I designation

Plaintiff also seeks injunctive relief from defendants in their official capacities under both § 1983 and RLUIPA. It is well settled that plaintiff can seek injunctive relief against defendants in their official capacities in a § 1983 action, because "official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71, n. 10, quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14, (1985); *Ex parte Young*, 209 U.S. 123, 159-160 (1908). Similarly, plaintiff can obtain injunctive relief from defendants, in their official capacities, under RLUIPA. *Mayfield v. Texas Department of Criminal Justice*, 429 F.3d 599, 605 (5th Cir. 2008). *Cf. Cardinal*, 564 F.3d at 798-99 (noting that prisoner's RLUIPA claim for injunctive relief, asserted against the warden in her official capacity, was moot because plaintiff had been transferred to another facility).

Nevertheless, plaintiff is not entitled to the requested relief. Plaintiff's STG I designation was removed on December 18, 2008, approximately two months after plaintiff filed this action. *See* Renunciation/Removal Form (docket no. 25-7). The removal of the STG I designation afforded plaintiff the injunctive relief sought in this action, rendering this claim moot. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome. . . Where one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy." *Powell v. McCormack*, 395 U.S. 486, 497 (1969). "In other words, if events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed." *Ailor v. City of Maynardville, Tennessee*, 368 F.3d 587, 596 (6th Cir. 2004) (internal quotation marks and bracket omitted). *See also*, *Cardinal*, 564 F.3d at 798-99 (plaintiff prisoner's

8

request for injunctive relief asserted against correctional facility's warden under RLUIPA was rendered moot when prisoner was transferred to a different facility). Accordingly, plaintiff's request for injunctive relief removing his STG I designation should be denied as moot.

> E. **Plaintiff's § 1983 claims against Director Caruso, Warden Bergh, and CFA Deputy Director Straub**

Plaintiff has alleged that Director Caruso, Warden Bergh and CFA Deputy Director failed to respond to his written inquiries regarding his STG I designation. These allegations are insufficient to state a claim under § 1983. None of these three prison officials participated in the decision to designate plaintiff as an STG I member. It is well settled that a § 1983 action cannot be based on a theory of respondeat superior. *See Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 691 (1978); *Taylor v. Michigan Dep't. of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). A supervisor's liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Plaintiff cannot maintain a § 1983 action against these three defendants simply because they failed to respond to his correspondence. "The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability." *Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D. N.Y.1997) (collecting cases). Accordingly, plaintiff's claims against Director Caruso, Warden Bergh and CFA Deputy Director Straub should be dismissed.

**F. Qualified immunity for § 1983 claims against Inspectors Smith and Contreras**

**1. Legal standard**

Finally, defendants contend that they are entitled to qualified immunity with respect to plaintiff's remaining § 1983 claims, which allege a violation of the First Amendment's Free Exercise Clause and a Fourteenth Amendment Equal Protection Claim.[5] Qualified immunity from civil actions for damages is not a mere defense to liability, but rather absolute immunity from suit and an entitlement not to stand trial, which should be determined at the earliest possible stage in litigation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Government officials have qualified immunity from suit under § 1983 for damages arising out of the performance of their official duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Consequently, the doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity involves a two-fold inquiry:

> First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . . [T]he next, sequential step is to ask whether the right was clearly established."

*Barber v. Overton*, 496 F.3d 449, 453 (6th Cir. 2007), quoting *Saucier*, 533 U.S. at 201.

---

[5] Because plaintiff's § 1983claims against defendants Christiansen, Bergh, Mulvaney, Straub and Caruso fail on other grounds, it is unnecessary for the court to address their claims of qualified immunity.

## 2. First Amendment claim

In Count I, plaintiff claims that defendants confiscated his religious materials necessary to practice his religion and discriminated and retaliated against him "for seeking to practice and advance his Rights of the Free Exercise Clause guaranteed by the 1st Amendment of the U.S. Constitution." Compl. at ¶ 44. Plaintiff's complaint does not contain any allegations to support claims of confiscation, retaliation or discrimination. The court has a duty to read a pro se plaintiff's complaint indulgently. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Kent v. Johnson*, 821 F.2d 1220, 1223-24 (6th Cir. 1987). However, this duty does not require the court to conjure up unpled allegations and claims.[6]

The gist of plaintiff's First Amendment claim is that he was designated as an STG I member because of his religious beliefs, specifically his membership in the Nation of Islam. MDOC records demonstrate that plaintiff was designated as an STG because of he was a member of an "Intolerant/Subversive Group" known as the "Family." *See* docket no. 25-3. When plaintiff renounced his affiliation with the STG in December 2008, the group was identified as an "Intolerant Subversive" group known as the "Family." *See* docket no. 35-7. None of the MDOC records indicate that plaintiff was designated as an STG due to his affiliation with the Nation of Islam or that

---

[6] *See Rogers v. Detroit Police Dept.*, 595 F. Supp.2d 757, 766 (E.D. Mich. 2009) ("[C]ourts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999), nor may courts construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Neither may the court 'conjure up unpled allegations,' *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir.1979), nor create a claim for Plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir.1975), because to hold otherwise would require the court 'to explore exhaustively all potential claims of a pro se plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.' *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).)

he was asked to renounce his affiliation with the Nation of Islam. In his affidavit in opposition to the motion for summary judgment, plaintiff attempts to create a First Amendment issue by stating that the renunciation form presented to him on June 10, 2003 "clearly bared [sic] the name: Nation of Islam; Intolerant/Subversive Group." Plaintiff's Aff. at ¶ 7 (docket no. 36-2). Contrary to plaintiff's claim, this renunciation form did not refer to the Nation of Islam. *See* docket no. 25-3, p. 6. For purposes of this motion, the court is not required to adopt plaintiff's version of the facts, which is "blatantly contradicted by the record." *See Scott*, 550 U.S. at 380.

Plaintiff has failed to demonstrate that his First Amendment rights were violated by failing to remove him from the STG I designation. Accordingly, Inspectors Smith and Contreras are entitled to summary judgment on this claim.

### 3. Fourteenth Amendment claim

Finally, in Count II, plaintiff contends that Inspectors Smith and Contreras violated his rights under the Equal Protection Clause of the Fourteenth Amendment. Plaintiff's contention is without merit. While plaintiff argues that his STG I designation was based upon religious beliefs, the record demonstrates that he was designated as an STG member due to his affiliation with the "Family," not with his religious affiliation with the Nation of Islam. A prisoner's designation as a member of an STG under the MDOC policy directives does not violate either his due process or equal protection rights. *Harbin-Bey*, 420 F.3d at 577-78. Inmates are not a suspect class and have no constitutional right to be placed in a specific security classification. *Id.* at 576. Furthermore, there is no due process violation associated with the STG I designation because a prisoner can file a grievance with respect to this designation, exhaust the grievance process and file a suit in federal court. *Id.* at 577-78. Plaintiff has failed to demonstrate a Fourteenth Amendment violation arising

from his STG I designation. Accordingly, Inspectors Smith and Contreras are entitled to summary judgment on that claim.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 24) be **GRANTED** and that this action be dismissed.


Dated: July 13, 2009	/s/ Hugh W. Brenneman, Jr.
	HUGH W. BRENNEMAN, JR.
	United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).