UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORTEZ ATKINS,

       Plaintiff,

v.

MARK CHRISTIANSEN, et al.,

       Defendants.
_____/

CASE NO. 1:08-CV-972

HON. ROBERT J. JONKER

## **ORDER APPROVING REPORT AND RECOMMENDATION**

The Court has reviewed the Magistrate Judge's Report and Recommendation (docket # 41) and Plaintiff's Objections (docket # 46). Under the Federal Rules of Civil Procedure, where, as here, a party has objected to portions of a Report and Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on de novo reconsideration, he or she finds it justified." 12 WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed. 1997). Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981).

The Report and Recommendation recommends that Defendants' motion to dismiss and for summary judgment (docket # 24) be granted. Plaintiff Cortez Atkins objects generally to the entire

recommendation and specifically to a few issues. After a de novo review of the record, the Court orders that Defendant's motion for dismissal and summary judgment be granted in part and denied in part.

Mr. Atkins' suit alleges that seven state actors violated RLUIPA and his First and Fourteenth Amendment rights by designating him as a member of a Security Threat Group ("STG") and by refusing to remove the STG designation. He contends that he has never participated in STG behavior and that Defendants classified him as a member of an STG because he participates in the religious services of the Nation of Islam. Mr. Atkins contends that the individuals are liable under 42 U.S.C. § 1983 and RLUIPA in both their individual and official capacities. He seeks injunctive relief and $45,000 in punitive damages from each person.

**I.     Claims against All Defendants in their Official Capacities Seeking Injunctive Relief**

Mr. Atkins objects to the Report and Recommendation's proposed dismissal as moot of his claims for injunctive relief. Mr. Atkins sought an injunction removing his designation as STG I. In December 2008, several months after this suit was filed, Mr. Atkins' designation as STG I was removed. Defendants' "voluntary cessation of a challenged practice" after the inception of this litigation does not necessarily moot Mr. Atkins' request for injunctive relief. *See League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008). Voluntary cessation of challenged conduct "moots a case only in the rare instance where subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (internal quotation marks omitted). The party asserting mootness bears the "heavy burden" of demonstrating "that the challenged conduct cannot reasonably be expected to start up again." *Id.* Although governmental officials "receive more solicitude on this point than do private parties," *id.* (internal quotation marks

omitted), Defendants have not yet met that burden in this case. They may be able to do so later on a complete record, but the case is now under considerations on the allegations of Mr. Atkins' complaint and before any discovery in the case. On the present record, Mr. Atkins' claims for injunctive relief cannot yet be dismissed as moot. *See id.*

II.     **Claims against All Defendants in their Official Capacities Seeking Monetary Relief**

Mr. Atkins' official-capacity claims seeking monetary relief from Defendants are barred by sovereign immunity under the Eleventh Amendment. *See Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) (holding that the Eleventh Amendment RLUIPA claims for money damages against states and state employees in their official capacities); *Rodgers v. Banks*, 344 f.3d 587, 594 (6th Cir. 2003) (holding that the Eleventh Amendment bars section 1983 claims for money damages against states and state employees in their official capacities). Mr. Atkins has no valid objection to the Report and Recommendation on this issue.

III.    **Section 1983 Claims against Inspector Christiansen and STG Coordinator Mulvaney**

The Magistrate Judge concluded that Mr. Atkins' section 1983 claims against Defendants Christiansen and Mulvaney were time barred. The Report and Recommendation concluded correctly that Mr. Atkins filed his claims more than five years after the violation, and more than two years after the statute of limitations expired. *See Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986) (holding that the statute of limitations period for an action in Michigan under section 1983 is the three-year period in Mich. Comp. Laws 600.5805(8)). Additionally, the violation alleged in this case resulted from a one-time designation that had "continual ill effects," not Defendants' continuous engagement in wrongful conduct. *See Broom v. Strickland*, No. 08-4200, --- F.3d ----, 2009 WL 2739603, *1 (6th Cir. Sept. 1, 2009). The violation therefore does not qualify as part of the narrow

3

category of continuous violations that toll the statute of limitations. *See id.* Mr. Atkins submits that he has good cause to excuse any timeliness default and that he presented evidence to show that he attempted to exhaust his administrative remedies. But this claim, even if true, misses the fundamental point that he failed to file a civil action within the applicable limitations period against these Defendants. Accordingly, Mr. Atkins's claims under section 1983 against Inspector Christiansen and STG Coordinator Mulvaney are barred by the statute of limitations. *See id.*

### IV. Section 1983 Claims against Director Caruso, Warden Bergh, and CFA Deputy Director Straub in their Individual Capacities

Mr. Atkins' individual-capacity claims seeking monetary relief from Director Caruso, Warden Bergh, and CFA Deputy Director Straub are properly subject to dismissal for failure to state a claim. Mr. Atkins alleges merely that these Defendants ignored his letters seeking to modify his STG I classification. A supervisor's liability, however, cannot attach "where the allegation of liability is based upon a mere failure to act." *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998). "Instead the liability must be based upon active unconstitutional behavior." *Id.* Here, Mr. Atkins has not alleged any "active unconstitutional behavior" on the part of these three supervisors. Accordingly, his individual-capacity claims against them must fail. *See id.*

### V. Section 1983 Claims against Inspectors Smith and Contreras in their Individual Capacities

The Report and Recommendation concludes that Inspectors Smith and Contreras are entitled to qualified immunity from Mr. Atkins' section 1983 claims under the First and Fourteenth Amendments. It concludes that the First Amendment claim fails because the evidence shows that Mr. Atkins was designated as STG I on the basis of his participation in a group known as the Family, not on the basis of his affiliation with the Nation of Islam. Accordingly, it concludes that the

Inspectors did not violate Mr. Atkins' rights by failing to remove the STG I designation. The Report and Recommendation further concludes that no Fourteenth Amendment due process violation can arise from this STG I designation because Mr. Atkins received the designation as the result of his participation in the Family, and because there is a process by which he could grieve the designation. Accordingly, the Report and Recommendation concludes that the Inspectors are entitled to qualified immunity on that claim.

Mr. Atkins contends that Inspectors Smith and Contreras are not entitled to qualified immunity because he was designated as a security threat because of his religious beliefs. The Court interprets this objection as one under Federal Rule of Civil Procedure 56(f). Defendants have submitted some evidence that Mr. Atkins was designated as a security threat as a result of his membership in a group known as the Family and not based on his religion. But this case is in its very early phase. Mr. Atkins claims Defendants relied only on his religious practice to misdesignate him as a member of the Family. He has not yet had an opportunity to develop evidence essential to justify his opposition to Defendants' motion for summary judgment, or to test the partial record outside the pleading that Defendants have presented. *See* Fed. R. Civ. P. 56(f). Accordingly, summary judgment on this claim at this time would be premature. *See id.* Defendants may renew their motion after the parties have had the opportunity for appropriate discovery.

**VI. RLUIPA Claims Seeking Monetary Relief against All Defendants in their Individual Capacities**

Mr. Atkins' complaint includes a claim under RLUIPA seeking $45,000 in damages from each Defendant in his individual capacity. The Report and Recommendation recommends dismissal of Mr. Atkins' individual-capacity claims under RLUIPA because it concludes that RLUIPA does

not provide for individual liability. Specifically, it concludes that RLUIPA, which was enacted under Congress' spending power, cannot be construed as creating a private right of action against individual defendants for money damages. The Report and Recommendation relies on *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007). A number of other circuit courts have reached the same result. Whether RLUIPA creates a cause of action for money damages against a state employee in his individual capacity is an open question in the Sixth Circuit. *See Heard v. Caruso*, Nos. 08-1710, 08-1779, 08-1820, 2009 WL 2628293, *10 n.5 (6th Cir. Aug. 27, 2009) ("This court has not ruled, however, on whether RLUIPA authorizes suits for monetary damages against state officials in their individual capacities.").

In determining whether such a cause of action is authorized under RLUIPA, the first question is whether Congress intended for the statute to create a claim for money damages against individual state employees. It is clear that Congress did so intend. In general, RLUIPA prohibits a "government" from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution." *See* 42 U.S.C. § 2000cc-1(a). RLUIPA creates a cause of action against a "government" to remedy violations of the act, 42 U.S.C. § 2000cc-2, and it defines a "government" as including, among other persons and entities, state officials and "any other person acting under color of State law," 42 U.S.C. § 2000cc-5(4)(A)(ii), (iii). This language is almost identical to the language in 42 U.S.C. § 1983, which authorizes individual-capacity claims. *See* 42 U.S.C. § 1983; *Gean v. Hattaway*, 330 F.3d 758, 765-66 (6th Cir. 2003). RLUIPA further authorizes all "appropriate relief." 42 U.S.C. § 2000cc-2(a). This statutory authorization employs language of expansion, not limitation. Additionally, Congress expressly intended that RLUIPA be given a broad construction "in favor of a broad protection of religious exercise, to the maximum extent permitted

by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g). Accordingly, RLUIPA clearly authorizes individual-capacity suits for money damages where money damages are necessary to redress a proven wrong under the statute. *Cf. Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 70-71 (1992) ("The general rule, therefore, is that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute.").

The next question is whether the Constitution prohibits Congress from authorizing under RLUIPA an individual-capacity action for money damages. If so, then this Court is compelled not to permit the action despite the clear congressional authorization. Of course, in making this determination, the Court must presume that the statute, which was enacted by a legislature oath-bound to uphold the Constitution, is constitutional. *See Heller v. Doe*, 509 U.S. 312, 320 (1993); *see also Illinois v. Krull*, 480 U.S. 340, 351 (1987).

Congress tethered RLUIPA to two of its Article I powers: spending and commerce. *See Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005). It did this by applying the substantive provisions of RLUIPA only to a government "program or activity that receives Federal financial assistance" or where the substantial burden on the religious exercise that would be prohibited by RLUIPA "affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C.A. § 2000cc-1(b)(1), (2). It is undisputed that Michigan accepts federal money for its prisons. There is not yet a complete record on whether the STG I classification decision affects interstate commerce. Accordingly, the Court will consider each of the two powers as a possible basis for authorizing the individual-capacity action in this case.

The Spending Power allows Congress to condition its grant of money on the recipient's willingness to accept the regulatory strings Congress chooses to impose. The power applies to money Congress offers to state recipients as well as private parties. In fact, Congress is empowered under the Spending Clause to condition its grant of money on the state's willingness to waive its sovereign immunity and submit to suit in state or federal court. *See Pennhurst State Scho. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). In this case, the question is whether Congress lacked the power to condition its grant of prison funding on the receiving state's willingness to have its employees acting under the color of the state's law subject to suit for money damages.

On general principles, it is hard to see any problem with this arrangement. Nothing in the Spending Power expressly limits Congress' authority to impose expressly this condition. Here, Congress was crystal clear in reciting the condition it intended to impose on its grant of funds. It expressly authorized under RLUIPA money damages against "any . . . person acting under color of state law." 42 U.S.C. § 2000cc-5(4)(A)(iii). The state remained free at all times to accept the condition by taking the money or to reject the condition by not taking the money. Michigan took the money and should not now be able to avoid the conditions Congress expressly attached. This is particularly true where the state employees at issue–the people running the prisons–are at least indirect beneficiaries of the federal funding. Moreover, the state has it within its own power to protect its employees, if it wishes to do so, by arranging to defend and indemnify them in appropriate cases. This is, in fact, standard operating procedure in section 1983 litigation, and it does not run afoul of the Eleventh Amendment. *See Wilson v. Beebe*, 770 F.2d 578, 587-88 (6th Cir. 1985) (holding that the Eleventh Amendment does not bar an action against a state official or employee individually for his tortious conduct even where the state has, by statute, elected to indemnify its

officials and employees for such conduct); *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 317 n.10 (1990) ("Lower courts have uniformly held that States may not cloak their officers with a personal Eleventh Amendment defense by promising, by statute, to indemnify them for damages awards imposed on them for actions taken in the course of their employment."). *Cf. Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430-31 (1997) (holding that Eleventh Amendment sovereign immunity turns on whether the initial judgment is enforceable against the state itself, not on whether the state actually pays the judgment after applying indemnification arrangements).

Of the Circuits that have held that RLUIPA cannot constitutionally authorize individual-capacity claims for damages, none have directly addressed this point. Instead, they have focused on the asserted lack of state power to subject third parties to the risk of suit. This misses the mark. In the first place, individuals do not enjoy sovereign immunity. If Congress chooses to create a cause of action against individuals, there is no analogue to sovereign immunity to prevent that. So by accepting such a condition as the price of receiving federal funds, the state is not really opening the door to some new and otherwise avoidable liability risk. Moreover, the very individuals who may be subject to suit here are not strangers to the implicit contract between the state recipient of federal money and the federal government. To the contrary, as employees of the prison program funded by the federal money, they are at least indirect, and possibly direct, beneficiaries of the federal money. There is nothing unfair about Congress tying receipt of its money to the possibility of litigation against the individuals running the programs Congress is funding.

*Allen* and cases like it from other circuits have relied on cases interpreting Title IX, 20 U.S.C. § 1681 as not permitting an individual-capacity suit for money damages. However, properly understood, the Title IX cases say nothing about the constitutional limits of Congress' spending

9

power. Instead, the Title IX cases involve a matter of statutory interpretation. The text of Title IX does not create expressly a private cause of action, nor does it state specifically that its prohibitions apply to an individual acting under the color of state law. *See Nelson v. Miller*, 570 F.3d 868, 887 n.12 (7th Cir. 2009) (noting that only a grant recipient can violate Title IX because, as a matter of statutory interpretation, Title IX prohibits discrimination only by a program or activity, not an individual). It states only that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." *Id.* RLUIPA, by contrast, expressly creates a cause of action against a person who, acting under the color of state law, imposes a substantial burden on the religious exercise of a person confined to prison. 42 U.S.C. § 2000cc-1; 42 U.S.C. § 2000cc-2(a); 42 U.S.C. § 2000cc-5(4)(A)(iii). Mr. Atkins' claims for money damages against the Defendants in their individual capacities therefore cannot be dismissed on that basis.

Even if Congress lacks power under the Spending Clause to create a claim for damages against an individual who benefits from federal funds received by a state, Mr. Atkins' claim would still not be dismissed at this time because the Commerce Clause may be sufficient to support the claim in this case. *See, e.g.*, *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 354 (2d Cir. 2007). Mr. Atkins has alleged that his status as a STG I prisoner prevents him from receiving vocational training or a work assignment. Mr. Atkins accordingly may be able to demonstrate an interstate-commerce nexus sufficient to validate the exercise of congressional power under the Commerce Clause in this case, which would permit his individual-capacity claim for damages to go forward. *See id.* The record is not yet complete on this point, but there is enough to require Defendants to answer the complaint and submit to appropriate discovery.

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge, filed July 13, 2009, is approved except as modified by this Order.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (docket # 24) is **GRANTED IN PART** and **DENIED IN PART**.

1. Dismissal of Mr. Atkins' official-capacity claims for injunctive relief under section 1983 and RLUIPA is **DENIED**.

2. Dismissal of Mr. Atkins' official-capacity claims for monetary relief under section 1983 and RLUIPA is **GRANTED**.

3. Dismissal of Mr. Atkins' section 1983 individual-capacity claims against Inspector Christiansen, STG Coordinator Mulvaney, Warden Bergh, MDOC Director Caruso, and CFA Deputy Director Straub is **GRANTED**.

4. Dismissal of Mr. Atkins' section 1983 individual-capacity claims against Inspector Smith and Inspector Contreras is **DENIED**.

5. Dismissal of Mr. Atkins' individual-capacity claims for monetary relief under RLUIPA is **DENIED**.

Dated:     November 20, 2009               /s/ Robert J. Jonker
                                            ROBERT J. JONKER
                                            UNITED STATES DISTRICT JUDGE