UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORTEZ ATKINS,

             Plaintiff,

v.

MARK CHRISTIANSEN, *et al.*,

             Defendants.

_____/

Case No. 1:08-cv-972

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a civil rights action brought by prisoner incarcerated by the Michigan Department of Corrections (MDOC). This matter is now before the court on defendants' motion to dismiss and for summary judgment (docket no. 74).

### I.      Background

Plaintiff has named the following defendants in his complaint: Carson City Correctional Facility (DRF) Inspector Mark Christiansen; Baraga Correctional Facility (AMF) Inspector Craig Smith; AMF Warden David Bergh; Alger Correctional Facility (LMF) Inspector Contreras; MDOC Director Patricia Caruso; Central Office Security Threat Group (CO STG) Coordinator Robert Mulvaney, and Central Facilities Administration (CFA) Deputy Director Dennis Straub.

Plaintiff's claims arise from his classification as a member of a security threat group (STG). Prisoners are prohibited from being members of an STG, which is defined as "a group of prisoners designated by the Director as possessing common characteristics which distinguish them from other prisoners or groups of prisoners and which, as a discrete entity, poses a threat to staff or

other prisoners or to the custody and security of the facility."  MDOC Policy Directive 04.04.113 ¶¶ A, J (eff. 4/28/2003).  A prisoner identified as an STG member can be designated as "STG I member" which results in consequences such as: being housed in security Level II or higher; limited visits;  having only those work or school assignments as approved by the CFA Classification Director; being prohibited from attending meetings of groups established by prisoners (except religious services and activities); participating in group leisure activities; and, having his cell searched at least weekly.  *Id.* at ¶¶ O-R, X.  A prisoner can be designated as an "STG II member" if he is identified as a leader, enforcer or recruiter of an STG, or if he performs certain prohibited activities while designated as an STG I member.  *Id.* at ¶ S.  An STG II member is subject to additional consequences.  *Id.* at ¶ Y.  The Sixth Circuit has previously upheld the MDOC's policy directive regarding the classification of inmates as STG members, finding that the policy is rationally related to the legitimate state interest of maintaining order in the prison.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th 2005).

The complaint sets forth the following allegations.  On June 16, 2003, DRF Inspector Christiansen designated plaintiff as an STG I.  Compl. at ¶¶ 14-18.[1]  Plaintiff was transferred to AMF on February 8, 2006.  *Id.* at ¶ 20.  In July 2006, AMF Inspector Craig Smith advised plaintiff that he would be considered for STG 1 removal if he stayed away from the Nation of Islam services and activities.  *Id.* at ¶ 22.  Although plaintiff had stopped attending Nation of Islam religious services in January 2006, he returned to the Nation of Islam services after meeting with Inspector Smith, stating that he "never heard from Smith again."  *Id.* at ¶¶ 21-23.  Plaintiff alleged that he

---

[1] The record reflects that plaintiff was designated as an STG I member on June 13, 2003.  *See* discussion, *infra*.

2

appealed his STG I designation on "[n]umerous occasions" by written requests directed to MDOC Director Caruso, AMF Warden Bergh, CO STG Coordinator Mulvaney, and CFA Deputy Director Straub.  *Id.* at ¶ 24.  However, none of them responded.  *Id.*

The MDOC transferred plaintiff to LMF on March 7, 2008.  *Id.* at ¶ 25.  On or about May 30, 2008, LMF Inspector Contreras met with plaintiff regarding his removal from STG I.  *Id.* They discussed a questionnaire taken from plaintiff upon his arrival at LMF that explained the differences between the Nation of Islam and the "Five Percenters."  *Id.*[2]  Inspector Contreras would not remove plaintiff from STG I designation at that time, but would consider it at a later date if staff members recommended removal.  *Id.*  On or about July 15, 2008, plaintiff received a copy of the document in which Inspector Christiansen originally designated him as an STG I for being in a group known as "Family."  *Id.* at ¶ 27.  Three days later, plaintiff signed an STG renunciation form, presented to him by Inspector Contreras.  *Id.*  at ¶ 28.  However, Inspector Contreras did not accept plaintiff's renunciation of the STG.  *Id.* at ¶ 29.

Plaintiff alleged that he has never been involved in STG behavior.  *Id.* at ¶ 30. Nevertheless, he  has been subjected to the harsh conditions applied to STG I prisoners: regular shakedowns; lack of vocational training or a work assignment; limits on visitation; and inability to participate in leisure time activities.  *Id.* at ¶¶ 31-37.  Plaintiff sets forth three counts against defendants in their individual and official capacities.  In Count I, plaintiff alleged that the MDOC violated the Free Exercise Clause of the First Amendment, and engaged in retaliation and

---

[2] "The Five Percent Nation originated in New York City in the 1960s after its leader, Clarence Smith (also known as Clarence 13X and Father Allah), broke away from the Nation of Islam.  The group's name derives from its belief in 'Supreme Mathematics,' which breaks down the population of the world into three groups: the Ten Percent, the Eighty Five Percent, and the Five Percent."  *Fraise v. Terhune*, 283 F.3d 506, 511 (3rd  Cir. 2002).

discrimination by confiscating "religious materials necessary to practice his religion." *Id.* at ¶ 44. In Count II, plaintiff alleged that his STG I designation violated his rights under the Equal Protection Clause of the Fourteenth Amendment. *Id.* at ¶ 45. In Count III, plaintiff alleged that he was deprived of his rights as guaranteed by the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc (a)(1-2). *Id.* at ¶ 46. For his relief, plaintiff seeks an injunction to remove his STG I designation and punitive damages against each defendant.

The court granted defendants' first motion for summary judgment in part and narrowed the remaining issues in this action. *See* Order approving report and recommendation (docket no. 48). First, the court denied defendants' motion with respect to plaintiff's request for injunctive relief against defendants in their official capacities. *Id.* at pp. 2-3. Second, the court granted defendants' motion with respect to plaintiff's claims for monetary damages against defendants in their official capacities. *Id.* at p. 3. Third, the court granted defendants Inspector Christiansen and CO STG Coordinator Mulvaney's motion with respect to plaintiff's claims under § 1983 as barred by the statute of limitations. *Id.* at pp. 3-4. Fourth, the court granted defendants Director Caruso, Warden Bergh and CFA Director Straub's motion with respect to plaintiff's § 1983 claims for monetary damages against them in their individual capacities. *Id.* at p. 4. Fifth, the court denied Inspectors Smith and Contreras' motion with respect to plaintiff's § 1983 claims against them in their individual capacities (i.e., plaintiff's First and Fourteenth Amendment claims). Sixth, the court denied defendants' motion with respect to plaintiff's claims for monetary damages against them under RLUIPA in their individual capacities. *Id.* at pp. 5-10.

4

Based on these rulings, the following claims remain:

1.      Plaintiff's § 1983 claim under the First and Fourteenth Amendment seeking monetary damages against Inspectors Smith and Contreras in their individual capacities.

2.      Plaintiff's RLUIPA claim for monetary damages against all defendants in their individual capacities.

3.      Plaintiff's claim for an injunction under § 1983 to remove the STG I classification directed against Director Caruso, CFA Deputy Director Straub, Warden Bergh, Inspector Smith and Inspector Contreras and in their official capacities.

4.      Plaintiff's claim for an injunction under RLUIPA to remove the STG I classification directed against Director Caruso, CFA Deputy Director Straub, CO STG Coordinator Mulvaney, Warden Bergh, Inspector Smith, Inspector Contreras and Inspector Christiansen in their official capacities.

## II.    Summary Judgment Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.    Plaintiff's § 1983 claim for monetary relief against Inspectors Smith and Contreras

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

A.      **First Amendment claim**

In Count I, plaintiff claims that defendants confiscated materials necessary to practice his religion and discriminated and retaliated against him "for seeking to practice and advance his Rights of the Free Exercise Clause guaranteed by the 1st Amendment of the U.S. Constitution." Compl. at ¶ 44. The court has a duty to read a pro se plaintiff's complaint indulgently. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Kent v. Johnson*, 821 F.2d 1220, 1223-24 (6th Cir. 1987). However, this duty does not require the court to conjure up unpled allegations and claims.[3]

Plaintiff's complaint does not contain any allegations to support claims of confiscation, retaliation or discrimination. The gist of plaintiff's First Amendment claim is that he was designated as an STG I member because of his religious beliefs, specifically his membership in the Nation of Islam. The undersigned previously reviewed this issue as follows:

> MDOC records demonstrate that plaintiff was designated as an STG because of he was a member of an "Intolerant/Subversive Group" known as the "Family." *See* docket no. 25-3. When plaintiff renounced his affiliation with the STG in December 2008, the group was identified as an "Intolerant Subversive" group known as the "Family." *See* docket no. 35-7. None of the MDOC records indicate that plaintiff was designated as an STG due to his affiliation with the Nation of Islam or that he was asked to renounce his affiliation with the Nation of Islam. In his affidavit in opposition to the motion for summary judgment, plaintiff attempts to create a First Amendment issue by stating that the renunciation form presented to him on June 10, 2003 "clearly bared [sic] the name: Nation of Islam; Intolerant/Subversive Group."

---

[3] *See Rogers v. Detroit Police Dept.*, 595 F. Supp.2d 757, 766 (E.D. Mich. 2009) ("[C]ourts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999), nor may courts construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Neither may the court 'conjure up unpled allegations,' *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir.1979), nor create a claim for Plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir.1975), because to hold otherwise would require the court 'to explore exhaustively all potential claims of a pro se plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.' *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).").

Plaintiff's Aff. at ¶ 7 (docket no. 36-2).   Contrary to plaintiff's claim, this renunciation form did not refer to the Nation of Islam.  *See* docket no. 25-3, p. 6. For purposes of this motion, the court is not required to adopt plaintiff's version of the facts, which is "blatantly contradicted by the record."  *See Scott*, 550 U.S. at 380.

Report and Recommendation (docket no. 41 at pp. 11-12).   After reviewing plaintiff's objections to the report and recommendation, the district court denied defendants' motion for summary judgment with respect to plaintiff's First Amendment claim, observing that defendants' motion was premature and that plaintiff should be allowed to develop evidence essential to justify his opposition to the motion.  *See* Order adopting report and recommendation (docket no. 48 at p. 4-5).

In the present motion, defendants have not presented any new evidence to support their claim.  Rather, they rely on arguments that the MDOC's regulation regarding STG designation are reasonable and that they are entitled to qualified immunity.   Defendants arguments, which consist largely of statements of legal standards, are unpersuasive.   First, defendants' discussion regarding enforcement of reasonable prison regulations is irrelevant because plaintiff's complaint does not attack the reasonableness of MDOC's STG regulation.  Second, defendants have presented only a conclusory argument in support of their claim for qualified immunity.   It is insufficient for defendants to simply cite law for the general proposition that qualified immunity exists and then make a conclusory assertion that they are entitled to it.  *Malec v. Sanford*, 191 F.R.D. 581, 588 (N.D.Ill.2000).   "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to  .  .  .  put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997).  Accordingly, defendants have waived the issue of qualified immunity for purposes of this motion.

Nevertheless, the court concludes that defendants are entitled to summary judgment on this claim.  Despite having the opportunity to conduct discovery, plaintiff has not presented any affidavits, documents or deposition testimony to oppose defendants' motion for summary judgment on the First Amendment claim.  Plaintiff's three-page "Response to Defendants [sic] motion for dismissal and summary judgment" (docket no. 78) contains a mixture of legal arguments, opinions and factual statements, many of which are conclusory or not relevant to the issues before the court.  Although plaintiff's response included a verification under penalty of perjury pursuant to 28 U.S.C. § 1746, the court does not consider all statements set forth in the response as evidence sufficient to create a genuine issue of material fact in this action.  *See* Fed. Rules Civ. Proc. 56(c)(4) ("[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").  To the extent that plaintiff's rather cryptic declaration can be construed to include statements of fact, these statements do not support plaintiff's claim that he was designated as an STG for failing to renounce the Nation of Islam.  In this regard, plaintiff states that his involvement in a prison fight had nothing to do with the STG known as the "Family," that "the 5 pages [of] Documents" were not Five Percenter material, and then speculates that other prisoners were designated as STG "through their membership and attendance of the Nation of Islam and Nation of Islam services."  *See* Response (docket no. 78).  Plaintiff has failed to present a genuine issue of material fact with respect to his claim that he was designated as an STG I due to his religious practices in violation of the First Amendment.  Accordingly, Inspectors Smith and Contreras are entitled to summary judgment on this claim.

9

### B.    Fourteenth Amendment claim

In Count II, plaintiff contends that Inspectors Smith and Contreras violated his rights under the Equal Protection Clause of the Fourteenth Amendment.   The undersigned previously reviewed this issue as follows:

> While plaintiff argues that his STG I designation was based upon religious beliefs, the record demonstrates that he was designated as an STG member due to his affiliation with the "Family," not with his religious affiliation with the Nation of Islam.   A prisoner's designation as a member of an STG under the MDOC policy directives does not violate either his due process or equal protection rights. [*Harbin-Bey v. Rutter*, 420 F.3d 571, 577-78 (6th Cir. 2005)].   Inmates are not a suspect class and have no constitutional right to be placed in a specific security classification. *Id.* at 576.   Furthermore, there is no due process violation associated with the STG I designation because a prisoner can file a grievance with respect to this designation, exhaust the grievance process and file a suit in federal court. *Id.* at 577-78.   Plaintiff has failed to demonstrate a Fourteenth Amendment violation arising from his STG I designation.

Report and Recommendation (docket no. 41 at pp. 12-13).   As with plaintiff's First Amendment claim, the court did not adopt the recommendation to dismiss the Fourteenth Amendment claim because it was premature.   *See* Order adopting report and recommendation (docket no. 48 at p. 4-5).

As previously discussed, defendants have presented only a conclusory argument with respect to their claim of qualified immunity.   Nevertheless, the court concludes that defendants are entitled to summary judgment on this claim for the reasons as stated in the earlier report and recommendation.   The MDOC's policy of designating prisoners STG members is rationally related to the legitimate state interest of maintaining order in the prison.   *See Harbin-Bey*, 420 F.3d at 576. "Identifying, reclassifying, and separating prisoners who are members of groups that engage in planning or committing unlawful acts or acts of misconduct targets a core threat to the safety of both prison inmates and officials."   *Id.* (internal quotation marks omitted).   The MDOC has presented documentation which demonstrates that plaintiff was designated as an STG I for his participation

10

in an intolerant subversive group, i.e., the "Family."  As previously discussed, plaintiff has failed

to present any evidence to support his claim that his STG I designation arose from his affiliation

with a religious group.  Plaintiff has failed to present a genuine issue of material fact with respect

to his claim that he was designated as an STG I due to his religious practices in violation of the

Equal Protection Clause.  Accordingly, Inspectors Smith and Contreras are entitled to summary

judgment on this claim.

### IV.    Plaintiff's RLUIPA claim for monetary damages

### A.    RLUIPA

RLUIPA prevents the government from placing a substantial burden on a prisoner's

religious exercise, providing in pertinent part that:

> (a) No government shall impose a substantial burden on the religious exercise of a
> person residing in or confined to an institution . . . even if the burden results from a
> rule of general applicability, unless the government demonstrates that imposition of
> the burden on that person--
>
>> (1) is in furtherance of a compelling governmental interest; and
>>
>> (2) is the least restrictive means of furthering that compelling
>> governmental interest.

42 U.S.C. § 2000cc-1.  RLUIPA allows a prisoner to "assert a violation of this chapter as a claim

or defense in a judicial proceeding and obtain appropriate relief against a government."  *Id.* at §

2000cc-2(a).

### B.    Statute of limitations

Inspector  Christiansen and CO STG Coordinator Mulvaney contend that plaintiff's

RLUIPA claims against them are barred by the statute of limitations.  The court agrees.  Congress

did not include a separate limitations period for bringing an action under RLUIPA.  However, other

courts have applied the four-year statute of limitations as set forth in 28 U.S.C. § 1658(a), which provides that for civil actions "arising under an Act of Congress enacted after [December 1, 1990]," the appropriate limitations period is four years. *See, e.g., Al-Amin v. Shear*, 325 Fed. Appx. 190, 193 (4th Cir. 2009); *Congregation Adas Yereim v. City of New York*, 673 F.Supp.2d 94, 107 (E.D.N.Y. 2009) ("[i]t is undisputed that the four-year catch-all federal statute of limitations, codified at 28 U.S.C. § 1658(a), governs claims brought under RLUIPA").

Plaintiff's only allegation against Inspector Christiansen is that the inspector designated plaintiff as an STG I on June 10, 2003. *See* Compl. at ¶ 27. In his affidavit, Inspector Christiansen acknowledged that he interviewed plaintiff on June 10, 2003, at which time Christiansen asked plaintiff to discontinue association with the "Family" and to discontinue plaintiff's militant and subversive behavior. Christiansen Aff. at ¶¶ 4-5 (docket no. 25-3). Inspector Christiansen completed a form on that date designating plaintiff as an STG I. *See* STG Member Identification (docket no. 25-3 at pp. 12-13).

Plaintiff's complaint does not allege any particular wrongful conduct on the part of C O STG Coordinator Mulvaney, other than to state that plaintiff did not receive any response to unspecified appeals of his STG I designation made to "each defendant." Compl. at ¶ 24. In his affidavit, Mulvaney stated that he has held the position of CO STG Coordinator since June 1996. Mulvaney Aff. at ¶ 3 (docket no. 25-4). While Mulvaney's affidavit does not discuss his involvement in plaintiff's STG, the original STG I designation includes a signature, which appears

to be that of Mulvaney, identified as the "C.O. STG Coordinator."[4]  There is no evidence before the court that Mulvaney denied plaintiff's "appeal" of this STG I designation at a later date.

The Sixth Circuit has drawn a distinction between a continuing violation occasioned by "continual unlawful acts" and the "continuing ill effects from an original violation."  *McCune v. City of Grand Rapids*, 842 F.2d 903, 905-06 (6th Cir. 1988).  *See, e.g., Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) (continuing non-employment resulting from a discriminatory action is not a continuing violation).  In this case, the alleged "unlawful act" was the STG I designation made by Inspector Christiansen on June 10, 2003 and CO STG Coordinator Mulvaney on June 13, 2003.  Plaintiff's subsequent confinement did not arise from subsequent acts by defendants but were the "continuing ill effects" from that original designation.  Plaintiff did not file this action until October 15, 2008, more than four years after Christiansen and Mulvaney engaged in their alleged unlawful acts in June 2003.  Accordingly, plaintiff's RLUIPA claims against Inspector Christiansen and CO STG Coordinator Mulvaney are barred by the four-year statute of limitations.

### C.    Monetary damages under RLUIPA

The court previously rejected defendants' claim that RLUIPA does not provide monetary damages for claims against prison employees in their individual capacities.  *See* Order approving report and recommendation (docket no. 48 at pp. 5-10).  Defendants apparently seek to have this court reconsider its earlier ruling.  After this court denied defendants' first motion for summary judgment on this issue in 2009, another judge in this court found that RLUIPA damages were not available against a defendant in his individual capacity, observing that "[e]very federal

---

[4] It appears that this document was mis-dated for June 13, 2002 rather than June 13, 2003.  *See* Mulvaney Aff. at ¶ 5 (referring to plaintiff's STG I designation as occurring on June 13, 2003).

appellate court that has addressed the issue has held that RLUIPA, as an exercise of Congress' Spending Clause power, does not authorize a claim for damages against state employees in their individual capacities" (citing opinions from the 4th, 5th, 7th, and 11th Circuits). *Green v. Tudor*, 685 F. Supp. 2d 678, 699 (W.D. Mich. 2010) (Neff, J.). This court, however, has rejected the reasoning in those cases. In *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010), a case involving RLUIPA claims against officials in both their official and individual capacities, the Sixth Circuit disposed of all claims for monetary damages, citing *Cardinal v. Metrish*, 564 F.3d 794 (6th Cir. 2009) for the general proposition that monetary damages were not available under RLUIPA. However, the *Colvin* decision did not discuss explicitly address the distinction between damages against government employees in their official capacity (the issue addressed in *Cardinal*) and damages against government employees in their individual capacities. Finally, in *Sossamon v. Texas*, -- U.S. --, 131 S. Ct. 1651(April 20, 2011), the Supreme Court recently held that the private action provision of RLUIPA did not clearly and unequivocally waive a state's sovereign immunity from suit for money damages by a prisoner whose free exercise rights were allegedly burdened. *See Sossamon*, 131 S. Ct. at 1658-59 ("RLUIPA's authorization of 'appropriate relief against a government,' § 2000cc–2(a), is not the unequivocal expression of state consent that our precedents require. 'Appropriate relief' does not so clearly and unambiguously waive sovereign immunity to private suits for damages that we can 'be certain that the State in fact consents' to such a suit.") (citation omitted). However, the *Sossamon* decision did not address the issue of whether "appropriate relief" under RLUIPA includes money damages against state employees in their individual capacities. Given the lack of subsequent persuasive or binding authority on this issue, the court concludes that there is no basis to alter the court's previous ruling on this issue.

14

Finally, the court rejects defendants' assertion that they are entitled to qualified immunity because there is no clearly established federal law establishing an inmate's right to individual capacity monetary damages under RLUIPA.  "Qualified immunity is an affirmative defense that will protect a state official sued in his individual capacity from damages liability." *Gunasekera v. Irwin*, 551 F.3d 461, 471 (6th Cir. 2009).   As the Supreme Court explained in *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808 (2009):

> The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.

*Pearson*, 555 U.S. at ---, 129 S. Ct. at 815 (internal quotation marks and citations omitted).  Here, defendants' claim of qualified immunity is unrelated to whether they engaged in conduct which violated plaintiff's clearly established statutory rights under RLUIPA.  Rather, defendants' assertion speaks to remedy for that conduct.  Rather, defendants seek qualified immunity because the law is unsettled as to whether they are liable for damages in their individual capacities for violating plaintiff's statutory rights under RLUIPA.  The court does not view this legal dispute as subject to the doctrine of qualified immunity, an affirmative defense which is asserted by government defendants who are subject to individual liability.  *See generally*, *Figel v. Overton*, 263 Fed. Appx. 456 (6th Cir. 2008) (denying defendants' motion for summary judgment on the basis of qualified

15

immunity for alleged RLUIPA violations).  Accordingly, defendants' claim of qualified immunity should be denied.[5]

### V.     Plaintiff's claims for injunctive relief to remove the STG I designation

Plaintiff also seeks injunctive relief from defendants in their official capacities under both § 1983 and RLUIPA.  It is well settled that plaintiff can seek injunctive relief against defendants in their official capacities in  a § 1983 action, because  "official-capacity actions for prospective relief are not treated as actions against the State."  *Will*, 491 U.S. at 71, n. 10, quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14, (1985); *Ex parte Young*, 209 U.S. 123, 159-160 (1908).  Similarly, plaintiff can obtain injunctive relief from defendants, in their official capacities, under RLUIPA.  *Mayfield v. Texas Department of Criminal Justice*, 429 F.3d 599, 605 (5th Cir. 2008).

### A.     Mootness

Plaintiff's STG I designation was removed on December 18, 2008, approximately two months after plaintiff filed this action.  *See* Renunciation/Removal Form (docket no. 25-7).  Although the removal of the STG I designation afforded plaintiff the injunctive relief sought in this action, the court rejected defendants' request in their first motion for summary judgment to find that the removal of this designation rendered plaintiff's claim for injunctive relief moot.

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome. . . Where one of the several issues presented becomes

---

[5] In this regard, the court notes that a contrary view expressed in the pre-*Figel* opinion of  *Marsh v. Granholm*, 2:05-cv-134, 2006 WL 2439760 at *14 (W.D. Mich. Aug. 22, 2006) (finding that defendants were entitled to qualified immunity because given the unsettled nature of the law with respect to liability for damages under RLUIPA they "could have reasonably believed that their conduct did not expose them to liability in their individual capacities under the RLUIPA").

moot, the remaining live issues supply the constitutional requirement of a case or controversy." *Powell v. McCormack*, 395 U.S. 486, 497 (1969).  "In other words, if events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed."  *Ailor v. City of Maynardville, Tennessee*, 368 F.3d 587, 596 (6th Cir. 2004) (internal quotation marks and bracket omitted).  *See also*, *Cardinal*, 564 F.3d at 798-99 (plaintiff prisoner's request for injunctive relief asserted against correctional facility's warden under RLUIPA was rendered moot when prisoner was transferred to a different facility).

The court denied defendants' request for summary judgment with respect to the injunctive relief by applying the doctrine of voluntary cessation:

> Mr. Atkins objects to the Report and Recommendation's proposed dismissal as moot of his claims for injunctive relief. Mr. Atkins sought an injunction removing his designation as STG I.  In December 2008, several months after this suit was filed, Mr. Atkins' designation as STG I was removed.  Defendants' "voluntary cessation of a challenged practice" after the inception of this litigation does not necessarily moot Mr. Atkins' request for injunctive relief.  *See League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008). Voluntary cessation of challenged conduct "moots a case only in the rare instance where subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Id.* (internal quotation marks omitted). The party asserting mootness bears the "heavy burden" of demonstrating "that the challenged conduct cannot reasonably be expected to start up again."  *Id.*  Although governmental officials "receive more solicitude on this point than do private parties," *id.* (internal quotation marks omitted), Defendants have not yet met that burden in this case. They may be able to do so later on a complete record, but the case is now under considerations on the allegations of Mr. Atkins' complaint and before any discovery in the case. On the present record, Mr. Atkins' claims for injunctive relief cannot yet be dismissed as moot. *See id.*

Order approving report and recommendation (docket no. 48 at pp. 2-3).  Defendants have not presented any additional evidence on this issue, let alone evidence sufficient to meet their "heavy burden of demonstrating that the challenged conduct cannot reasonably be expected to start up

again." *League of Women Voters of Ohio*, 548 F.3d at 473 (internal quotation marks omitted).

Accordingly, defendants' motion should be denied.[6]

### B. Injunctive relief on the merits

Finally, defendants contend that the court should deny plaintiff's request for injunctive relief. Plaintiff's complaint seeks "an injunction ordering defendants to immediately remove Plaintiff's STF 1 designation." Compl. (docket no. 1 at pp. 15-16). As previously discussed, plaintiff has received this relief and does not request any other injunctive relief in this action. Although there is no motion for preliminary injunction pending before the court, defendants incorrectly characterize this request as one for a preliminary injunction. Defendants' Brief (docket no. 75 at p. 7). Defendants argument, which utilizes the standard applicable to a preliminary injunction, is inappropriate. *Id.* at pp. 7-9. Accordingly, defendants' motion, which seeks denial of a preliminary injunction related to plaintiff's STG I designation, should be denied.

---

[6] Some courts have either questioned the applicability of, or simply failed to apply, the voluntary cessation doctrine in the prison context. *See, e.g.*, *Incumaa v. Ozmint*, 507 F.3d 281, 288-89 (4th Cir. 2007)(observing that in applying the voluntary cessation doctrine to issues of prisoner discipline, the court would have to assume that the prisoner would flout the prison's standards and codes of conduct and that "[w]e surely cannot base our mootness jurisprudence in this context on the likelihood that an inmate will fail to follow prison rules"); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (the prisoner's claim that MDOC employees improperly viewed his legal mail at a correctional facility became moot when the prisoner was no longer confined to the particular MDOC institution that searched his mail); *Hale v. Ashcroft*, 683 F.Supp.2d 1189, 1197-98 (D. Colo. 2009) (the voluntary cessation doctrine is inapplicable to the Federal Bureau of Prisons decision to impose special administrative measures (SAMS) on a prisoner after lifting previously imposed SAMS; this is true because review of future instances of wrongful behavior may be quite different from the complained-of example that already has ceased).

## VI.    Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 74) be resolved as follows:

A.    That Inspector Smith's motion for summary judgment with respect to plaintiff's § 1983 claims for monetary relief be **GRANTED**;

B.    That Inspector Contreras' motion for summary judgment with respect to plaintiff's § 1983 claims for monetary relief be **GRANTED**;

C.    That Inspector Christiansen's motion for summary judgment with respect to plaintiff's RLUIPA claims be **GRANTED** and that he be dismissed from this action;

D.    That CO STG Mulvaney's motion for summary judgment with respect to plaintiff's RLUIPA claims be **GRANTED** and that he be dismissed from this action; and,

E..    That defendants' motion be **DENIED** in all other respects.


Dated:  June 6, 2011                                    /s/ Hugh W. Brenneman, Jr.
                                                        HUGH W. BRENNEMAN, JR.
                                                        United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).